UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LATASHA M. BROWN,
ADMINISTRATRIX OF THE ESTATE
OF CHRISTOPHER STEVENSON,
     Plaintiff,

v.                                  No. 3:14CV228 (DJS)

ST. MARY'S HOSPITAL,
ET AL.,
     Defendants.


MEMORANDUM OF DECISION

In her amended complaint, the plaintiff, Latasha M. Brown, Administratrix of the Estate

of Christopher Stevenson, alleges that the defendant St. Mary's Hospital ("the Hospital") violated

the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd(b),

by failing to provide the plaintiff's decedent, Christopher Stevenson, Jr. ("Stevenson"), with

treatment necessary to stabilize his emergency medical condition prior to discharging him into

the community. The amended complaint also includes common law negligence claims against

both the Hospital and the defendant Adam D. Corrado, M.D. ("Dr. Corrado"). Pursuant to Fed. R.

Civ. P. 12 (b)(6), the Hospital has filed a motion to dismiss the plaintiff's EMTALA claim,

contending that the amended complaint fails to state a claim upon which relief can be granted.

For the reasons stated below, the defendant Hospital's motion to dismiss (doc. # 22) is denied.

FACTS[1]

At approximately 6:30 p.m. on June 7, 2013, Stevenson presented at the Hospital's

---

    [1]For purposes of considering the motion to dismiss, the Court "accept[s] all factual allegations in the [amended] complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

emergency department. He stated, "I think I'm in DKA[2]," and complained of extreme thirst,

weakness, and frequent urination. Stevenson had a history of insulin-dependent diabetes mellitus

with poor medication compliance and poor access to care. He had previous interactions with the

Hospital.

Stevenson was treated in the emergency department by Dr. Corrado, whose impression

was "hyperglycemia, rule out diabetic ketoacidosis, no coma." (Doc. # 18, at 3-4, ¶ 12). Dr.

Corrado's plan called for intravenous fluids, potassium repletion as necessary, and insulin as

needed. Stevenson remained in the Hospital until his discharge at approximately 6:30 a.m. on

June 8, 2013. During that time the Hospital provided various types of treatment to Stevenson,

including the administration of normal saline, insulin, and potassium chloride. Laboratory testing

was done and then repeated, and a chest x-ray and electrocardiogram were also completed.

Stevenson's vital signs and urinary output were taken and recorded and a urinalysis was

completed.

At the time of his discharge, Stevenson was still in diabetic ketoacidosis. At

approximately 10:35 p.m. on June 9, 2013,  Stevenson was found to be unresponsive at his

residence and was pronounced dead at 10:45 p.m. that same day. The results of an autopsy

revealed abnormal laboratory testing including high glucose and a large concentration of ketones

---

[2]The parties agree that "DKA" stands for diabetic ketoacidosis, which is "a life-threatening problem that affects people with diabetes. It occurs when the body cannot use sugar (glucose) as a fuel source because there is no insulin or not enough insulin. Fat is used for fuel instead. When fat breaks down, waste products called ketones build up in the body. . . . In high levels, ketones are poisonous." http://www.nlm.nih.gov/medlineplus/ency/article/000320.htm.

in the urine. The cause of death was identified as complications from diabetes mellitus with

diabetic ketoacidosis as another significant condition.

DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation marks and citation omitted). Dismissal is appropriate "only if it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Harper v. City of New York*, 424 F. App'x 36, 38 (2d Cir. 2011)

(internal quotation marks omitted).

The Hospital contends that the plaintiff's EMTALA claim lacks facial plausibility, and

consequently fails to state a claim under that statute, because it "contains no allegation of

disparate treatment." (Doc. # 23, at 9). According to the Hospital, "plaintiff has essentially

alleged a medical malpractice claim cloaked in the guise of an EMTALA claim. " (*Id.* at 6). The

plaintiff, on the other hand, argues that her amended complaint alleges facts sufficient to state a

plausible "stabilization" claim under EMTALA (42 U.S.C. § 1395dd(b)).[3]

EMTALA "imposes two relevant obligations on a hospital receiving an emergency

patient. First, the hospital 'must provide for an appropriate medical screening examination . . . to

---

[3]Although the plaintiff's objection to motion to dismiss characterizes her EMTALA claim as a "screening" claim in several instances, it is clear to the Court that the amended complaint asserts a "stabilization" claim, and the Hospital's reply to opposition to motion to dismiss acknowledges that "on the whole she is alleging and characterizing her claim as a 'stabilization' claim falling under 42 U.S.C. § 1395dd(b)." (Doc. # 31, at 1 n.1).

determine whether or not an emergency medical condition . . . exists.'" *Perez v. Brookdale*

*University Hospital & Medical Center*, 981 F. Supp. 2d 175, 177 (E.D.N.Y. 2013) (quoting 42

U.S.C. § 1395dd(a)).  Second, if it is determined that the patient has an emergency medical

condition, the hospital "'must provide . . . such treatment as may be required to stabilize the

medical condition . . . . '" *Id.* (quoting 42 U.S.C. § 1395dd(b)). An individual suffering personal

harm as a result of a hospital's violation of either the screening or stabilization obligation may

pursue a civil action against the hospital. *See* 42 U.S.C. § 1395dd(d)(2)(A).

The Hospital argues that "[i]t is only the failure to provide uniform treatment to all people

coming to the emergency room with a similar condition - - disparate treatment- - that is

actionable under EMTALA." (Doc. # 23, at 8). A number of the cases the Hospital cites in

support of this argument discuss disparate treatment in the context of EMTALA screening

claims, as opposed to EMTALA stabilization claims. *See, e.g., Brenord v. Catholic Medical*

*Center of Brooklyn & Queens, Inc.*, 133 F. Supp. 2d 179, 185 (E.D.N.Y. 2001); *Fisher v. New*

*York Health & Hospitals Corp.*, 989 F. Supp. 444, 449 (E.D.N.Y. 1998). Courts have

consistently held that the EMTALA screening requirement imposes a duty "to provide uniform or

even-handed screening examinations for emergency conditions,  consistent with [a hospital's]

own policies and based on the hospital's capabilities and the medical circumstances and

symptoms presented." *Macamaux v. Day Kimball Hospital*, Civil Case No. 3:09-CV-164 (JCH),

2011 U.S. Dist. LEXIS 105449, at *8-9 (D. Conn. Sept. 16, 2011).

There is language in some of the case law that seems to support the Hospital's argument.

*See Vickers v. Nash General Hospital, Inc.*, 875 F. Supp. 313, 317 (E.D.N.C. 1995) ("The facts

do not support a finding that the stabilizing procedure violated the statute. . . . There is no

indication that the defendant hospital released the decedent with any bad faith or purpose of

disparate treatment."). On the other hand, the Hospital has not cited any binding precedent in this

regard, and the statute plainly states that the hospital must provide "such treatment as may be

required to stabilize the medical condition." 42 U.S.C. § 1395dd(b). *See Perez*, 981 F. Supp. 2d

at 177 ("A patient is 'stabilized' when 'no material deterioration of the [emergency medical]

condition is likely, within reasonable medical probability, to result from or occur during the

transfer [including the discharge] of the individual from a facility . . . .'"). The Court recognizes

that EMTALA was not intended "to provide a federal remedy for misdiagnosis or medical

negligence." *Hardy v. New York City Health & Hospitals Corp.*, 164 F.3d 789, 792 (2d Cir.

1999) (internal quotation marks omitted). At the same time, EMTALA screening and

stabilization requirements are two distinct obligations, and it has been determined by some courts

that "the stabilization requirement is not met by simply dispensing uniform stabilizing treatment,

but rather, by providing the treatment necessary 'to assure, within reasonable medical probability,

that no material deterioration of the condition is likely to result . . . .'" *Eberhardt v. City of Los

Angeles*, 62 F.3d 1253, 1259 n.3 (9th Cir. 1995) (quoting 42 U.S.C. § 1395dd(e)(3)(A)); *see also

In re Baby "K"*, 16 F.3d 590, 595 (4th Cir. 1994) ("the duty of the Hospital to provide stabilizing

treatment for an emergency medical condition is not coextensive with the duty of the Hospital to

provide an 'appropriate medical screening'").

The plaintiff alleges in her amended complaint that Stevenson presented at the Hospital's

emergency department and stated that he believed he was "in DKA." (Doc. # 18, at 3, ¶ 9). Dr.

Corrado, who was Stevenson's treating physician in the emergency department, indicated that it

was necessary to "rule out diabetic ketoacidosis." (*Id.* at 3-4, ¶12). The Hospital has not argued

that diabetic ketoacidosis is not an emergency medical condition or that it was unaware of Stevenson's condition. *See Macamaux*, 2011 U.S. Dist. LEXIS 105449, at *18 ("EMTALA requires stabilization of any known emergency medical conditions prior to discharge").

The plaintiff further alleges that although the Hospital performed various tests on Stevenson, and provided him with certain types of treatment, Stevenson "was still in diabetic ketoacidosis (DKA) and his condition was not stabilized upon his discharge." (Id. at 6, ¶30). "At the pleading stage, [courts] consider only whether the complaint includes factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8, 10 (2d Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court concludes that the amended complaint does include factual allegations sufficient to raise the right claimed under EMTALA above the speculative level and that the plaintiff has stated a plausible claim for relief under EMTALA.

CONCLUSION

For the reasons stated above, the defendant Hospital's motion to dismiss (**doc. # 22**) is  **DENIED**.


**SO ORDERED** this   12th    day of January, 2015.




_____/s/ DJS_____
                   Dominic J. Squatrito
                   United States District Judge